# IN THE UNITED STATES DISTRICT COURT
# WESTERN DIVISION OF WASHINGTON

| | | |
|---|---|---|
| JONES PACIFIC MARITIME, LLC, a Washington Limited Liability Company, | ) ) ) | NO. |
| Plaintiff, | ) ) | VERIFIED COMPLAINT |
| WAHKIAKUM COUNTY, INC., the SUPERIOR COURT OF WAHKIAKUM COUNTY, the COUNTY OF COWLITZ, INC., and the SUPERIOR COURT OF COWLITZ COUNTY, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) | Jury Trial    [Yes] |

## 1.0 INTRODUCTION

1.1    This complaint is being brought for relief for the deprivation of the due process rights held by plaintiff Jones Pacific Maritime, LLC, which resulted in substantial damages. The accounts and the assets of the plaintiff were invaded and

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **1**

stripped by the courts of the two counties identified above, and did so based on fraud and conjecture, although neither court ever obtained personal jurisdiction over the plaintiff.  The plaintiff never appeared in the action prior to judgment and when the plaintiff sought a remedy, the superior court ruled that the plaintiff had no standing because it was not a party to the underlying action. When questioned as to how the court could strip the assets of a non-party without notice or personal jurisdiction, it was admitted in open court that they did the same "all the time."

1.2    Plaintiff asserts that the actions of Cowlitz and Wahkiakum judiciary is subject to their control and that, the defendants knew or should have known the common course of action within their courts, and failed to properly supervise and ensure, there judiciaries acted in compliance with the rights secured to plaintiff under the Bill of Rights and the Constitution of the United States.

## 2.0 PARTIES

2.1    Jones Pacific Maritime, LLC, D-U-N-S Number 079519395, is a Washington Limited Liability Company, whose address is 529 SR 409, Cathlamet, Wahkiakum County, Washington.

2.2    Wahkiakum County Inc., D-U-N-S number 195460274, is in Skamokawa, Washington, United States, and is part of the US Municipal Governments Industry. Wahkiakum County Inc has 207 total employees across all its

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **2**

locations. There are 11 companies in the Wahkiakum County Inc. corporate family, including the Wahkiakum County Courts.

2.3    County of Cowlitz, D-U-N-S number 081976292, is in Kelso, WA, United States and is part of the US Municipal Governments Industry. County of Cowlitz has 847 total employees across all its locations and generates $79.38 million in sales (USD). There are 38 companies in the County of Cowlitz Inc. corporate family, including the County of Cowlitz Courts.

**3.0 JURISDICTION AND VENUE**

3.1    Plaintiff raises a federal question under 42 U.S. Code 1983, as the execution of the policies, customs or usage of the Wahkiakum County and the County of Cowlitz, Judiciaries in respect to the disposition of property held by distinct incorporated entities associated with the ultimate disposition of a party to a divorce, that amounts to the deprivation of rights protected under the Fourteenth Amendment.

3.2    Plaintiff seeks to redress the deprivation, under color of any law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States and jurisdiction is therefore proper pursuant to 28 U.S. Code § 1343(3).

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **3**

3.3    Plaintiff seeks to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights and jurisdiction is therefore proper pursuant to 28 U.S. Code § 1343(4).

3.4    Venue is therefore proper pursuant to 28 U.S. Code § 1391(b)(2).

3.5    Federal courts are authorized to hear cases brought under section 1983 28 U.S.C.A. § 1343(3) (1948) and 28 U.S.C.A. § 1331 (1948), to hear cases involving the deprivation of civil rights, and to hear (all) cases involving a federal question or issue. Cases brought under section 1983 may therefore be heard in federal courts by application of (both) jurisdictional statutes.

## 4.0 STATEMENT OF APPLICABLE FACTS

4.1    Harvey Britton Jones III (hereafter "Jones") bought the antique motor vessel Chesapeake in 2004 to develop a business for his retirement, Chesapeake Charters DBA, which was formed as a sole proprietorship that year. The MV Chesapeake was not seaworthy at that time.  Jones was a professional Ship Wright and had been so for several years before acquiring the MV Chesapeake.

4.2    In January 2009 Jones married and thereafter, elected to work for one of his former employers, Crowley Maritime. The MV Chesapeake began to suffer from a lack of maintenance after that time.

4.3    In 2012, Jones changed employers to work for the Native Tribe of Naknek. The Native Tribe of Naknek (hereafter "Naknek") was greatly disorganized

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **4**

in how they managed their employees, and Jones struggled to be paid from Naknek through 2013.

4.4    During this time, Jones took out (personal loans) to finance a state chattel lien for missing wages against Naknek in September 2013, and in March 2014. Naknek forfeited the chattel to Jones at auction, and thereafter in March of 2014, more (personal loans) with contracts and mortgages were obtained (by Jones) to start Jones Pacific Maritime LLC, the successor-in-interest to the sole proprietorship Chesapeake Charters DBA.

4.5    In September 2014, Naknek sued (Jones personally and Jones Pacific Maritime LLC) in Admiralty, for using state law to conduct a chattel auction. The MV Chesapeake was damaged soon after.

4.6    In September 2015, a settlement was reached in Jones' favor and Naknek agreed to compensate Jones for back wages in the amounts of $161,000 delivered by a signed receipt for all wages owed paid in full, and $339,400 for damages secured by a First Preferred Ship Mortgage made on November 17, 2015, and filed on November 24, 2015, by Naknek in favor of Jones Pacific Maritime LLC. The amounts due were paid to the trust account of Holmes Weddle & Barcott in 2016. (Attached hereunto, Preferred Ship Mortgage.)

4.7    In March 2016, a Bayliner boat, renamed the MV Santa Cruz was purchased by Jones using funds from the Chesapeake damage settlement from Naknek

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **5**

to Jones Pacific Maritime LLC (hereafter, "JPM") for business purposes and to assist the voyage of the damaged MV Chesapeake back to Cathlamet, Washington. The transfer of the vessels into JPM began at that time. Prior to transporting the MV Chesapeake to Washington, Jones began surveying for repairs of the MV Chesapeake and the MV Santa Cruz in Alaska in March through April 2016.

4.8    In May 2016, Jones paid off the mortgage on his home in Cathlamet with funds from the back wages award in the amount of $84,696.

4.9    Soon after, Jones left to return to work in Alaska.  With Jones in Alaska, Jones' wife moved to secure a protection order in Wahkiakum County and caused Jones to be served in Alaska.  Jones then returned to Cathlamet to challenge the veracity of the allegations made in support the issuance of that order.  While there, Jones could not obtain JPM's files and records however, paid his accountant in advance to prepare its taxes. (Attached hereunto Declaration of Accsell Accounting Inc.).

4.10    Then, on July 14, 2016, Jones' wife, improperly filed for divorce and a restraining order in Cowlitz County, a county in which neither party resided, and which consequently had no jurisdiction.  As part of the Restraining Order, to keep Jones from accessing JPM's shop and property at the marital residence, the Court also Ordered, the last settlement payment of $100,000 due JPM from Naknek to be seized.

4.11    Following the improper filing for divorce in Cowlitz County and the seizure of the Naknek settlement funds, Jones' wife properly filed for divorce in Wahkiakum County, on September 1, 2016.

4.12    At no time was Jones Pacific Maritime, LLC ever named as a party in either action: Jones v. Jones, Cowlitz County Cause Number 16-3-00463-1, or Wahkiakum County Cause Number 16-3-00859-6, nor was  Jones Pacific Maritime, LLC ever served process, a summons, nor any other form of pleading in either action.

4.13    During the course of the Wahkiakum case, the Court freely dipped into the discreet and separate accounts of Jones Pacific Maritime, LLC, dividing funds from the account with the lawyers for the parties over Jones' objection, and ultimately by final order of October 22, 2018, disposed of the entire amount of all of the accounts, disposed of the MV Chesapeake and the MV Santa Cruz by judicial fiat, and awarded by means of a forfeiture clause the entire marital estate to Jones' wife, and all of the shop, shipwright tools, supplies, and equipment, belonging to JPM.  (Attached hereunto, Affidavit of EZ Move a moving service company.)

4.14    When challenged by motion for reconsideration in August 2019, concerning the disposition of the assets belonging to Jones Pacific Maritime, LLC, the trial court ruled that because Jones Pacific Maritime, LLC

was not a party, it had no standing to raise the motion.  (Attached hereunto, Certified Transcript.)

## 5.0 STATEMENT OF CLAIMS

5.1    The Courts of Cowlitz and Wahkiakum Counties, which operate respectively on behalf of the County of Cowlitz, Inc. and Wahkiakum County, Inc., commonly invade the assets of privately held corporations, when such corporations are owned all or in part by men who are being divorced in Wahkiakum or Cowlitz County's without obtaining personal jurisdiction.

5.2    Both Cowlitz and Wahkiakum Counties turn a blind eye to these systemic practices, and all the defendants knew or should have known that such practice is prohibited by applicable law and, long-standing rights of due process protected under the 14th Amendment.

5.3     Both Cowlitz and Wahkiakum County Courts had no jurisdiction over the property of a non-party.  Jurisdiction means the power to hear and determine.

5.4    JPM was formed in May 2014, two plus years before both court actions. It was the successor-in-interest to Chesapeake Charters, and was assigned the assets of Chesapeake Charters, which consisted of the MV Chesapeake, shipwright tools, ship repair supplies, and related equipment, and which held all right, title and interest to the damages awarded from the Naknek settlement, $339,000, + from which the MV Santa Cruz was purchased.

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **8**

5.5     The Orders issued by Cowlitz County and the Orders and Decree of
Dissolution issued from Wahkiakum County, were void, because they violated the due
process rights of JPM by distributing the assets of JPM without JPM every being a
party to those actions, or without any discussion of piercing the corporate veil.

5.6     Because neither court had jurisdiction, the orders as to the assets of JPM
were at all times, void.

5.7     There is no record whatsoever of any attempt to serve or join JPM to
either Jones v. Jones cases in Cowlitz or Wahkiakum counties. Nor did JPM ever
appear or defend in either action, as Jones personally is prohibited by law from
representing a corporation of which he is the owner, when he is not licensed to
practice law.

5.8     JPM is the entity which rightfully held the Title of Documentation to both
Vessels, the MV Chesapeake and the MV Santa Cruz, and which had all right and title
to the damage settlement of $339,000 dollars, all which was unlawfully redistributed
by the Cowlitz and Wahkiakum County Judiciary, without personal or subject matter
jurisdiction.

5.9     Because the judgment as to all the assets belonging to JPM is void, the
distribution of these assets has damaged Jones Pacific Maritime LLC in the amount of
$339,000 dollars, plus the replacement value of the MV Chesapeake, the MV Santa

Cruz, the shipwright tools, supplies, and associated equipment, and the outstanding debt that was and is, attributed to Jones Pacific Maritime LLC.

## 6.0 CAUSES OF ACTION
### (US Constitutional Claim)

6.1     The Cowlitz and Wahkiakum Counties, through their judiciary, seized, removed, caused to be sold, and redistributed cash and assets belonging to plaintiff JPM and did so in violation of Federally Protected due process standards of the Fourteenth Amendment. See *Nelson v Adams USA Inc.,* 529 US 460 (2000), see also, *Native Village of Naknek v Jones Pacific Maritime, LLC, et al.,* 141 F.Supp.3d 1157 (2015).

6.2     The practice of violating the rights of corporate entities in divorce or dissolution proceedings is the common practice of both County judiciaries and is done with the knowledge of the defendants.

6.3     The County of Cowlitz, Inc. is liable for all damages created by the County of Cowlitz judiciary because of its deliberate indifference to the rights of persons subjected to their actions.

6.4     The Wahkiakum County, Inc. is liable for all damages created by the Wahkiakum County judiciary because of its deliberate indifference to the rights of persons subjected to their actions.

### PRAYER FOR RELIEF

### (US Constitutional Claims)

WHEREFORE, Plaintiff Jones Pacific Maritime, LLC prays for the following relief:

- For an award of damages from the defendants in the amount of $339,000.00 together with statutory interest from the date of the transfer of the money from the rightful possession of Jones Pacific Maritime, LLC to any other person or entity.

- For an award of damages from the defendants in the amount of the replacement cost of the MV Chesapeake.

- For an award of damages from the defendants in the amount of the replacement cost of the MV Santa Cruz.

- For an award of damages from the defendants in the amount of the replacement value for the shop, shipwright tools, equipment and supplies.

- For an award of damages from the defendants in the amount of the outstanding debt caused by seizure of JPM's settlement.

- For punitive damages in an amount sufficient to deter the County of Cowlitz from failing to supervise their corporate company, Cowlitz County Court's in its ongoing practice of violating the due process rights of entities over which it asserts control.

• For punitive damages in an amount sufficient to deter Wahkiakum County from failing to supervise their Corporate compony, Wahkiakum County Court's in its ongoing practice of violating the due process rights of entities over which it asserts control.

• For all other relief, whether legal or equitable, which this court may find applicable.

Respectfully submitted this _14_ day of _September_ 2021.

Harvey B. Jones
President, Jones Pacific Maritime, LLC

**Verification, Certification, and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

, Signed in _Vancouver_ , WA _9_ /_14_/2021.
Harvey Britton Jones, III

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **12**

EMAILED Batch #: 32126900 / Doc #: 9 / File Date: 11/24/2015 4:48:00 PM

### PREFERRED SHIP MORTGAGE

Dated as of November 17, 2015

made by

**NAKNEK NATIVE VILLAGE**
P.O. Box 106
Naknek, Alaska 99633

**Mortgagor**

in favor of

**JONES PACIFIC MARITIME, LLC**
529 State Road 409
Cathlamet, Washington 9612

**Lender**

| | |
|---|---|
| Vessel : | **F/V SEAHORSE, O.N. 292012** |
| Mortgagor: | **NAKNEK NATIVE VILLAGE** |
| Mortgagor's Interest in the Vessel: | 100% |
| Interest in the Vessel Mortgaged Hereunder: | 100% |
| Lender: | **JONES PACIFIC MARITIME, LLC** |
| Amount of Mortgage: | **$338,400.00 U. S. Dollars as contemplated By Title 46 Section 31321(b)(3)** |

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DIVISION OF WASHINGTON

| | |
|---|---|
| JONES PACIFIC MARITIME, LLC, a Washington Limited Liability Company, | NO. |
| Plaintiff, | DECLARATION OF CAROLYN OLSEN |
| WAHKIAKUM COUNTY, INC., the SUPERIOR COURT OF WAHKIAKUM COUNTY, the COUNTY OF COWLITZ, INC., and the SUPERIOR COURT OF COWLITZ COUNTY, | |
| Defendants. | |

Declaration of Carolyn Olson in support of Jones Pacific Maritime LLC

I, Carolyn Olson, being of the age of 18 years and legally competent to testify to the matters set forth herein, with personal knowledge of the same, now, subject to the laws of perjury in the State of Washington as enforced in Clark County, Washington, do declare as follows:

I am an accountant and own Accell Accounting Inc. located at 11115 NE 14th St. Suite 103, Vancouver WA. 98684. I have prepared tax returns for Harvey Jones and his companies including Jones Pacific Maritime LLC and its predecessor in interest since 2010.

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **1**

On or about June 13, 2016, Harvey Jones was in my office discussing the need to get his companies tax returns in order for the years 2015 & in preparation to file for 2016, along with his personal returns for 2015. This was in regard to a settlement that was part of the discussion on that day. My estimate was that it would cost around $3,000 to prepare the filings for 2015 and during the corse of that meeting I received a payment of $5,000. As I recall, that payment was to insure the total cost of preparation for filing would be covered. I have seen the bank statement record of that payment to Accell Accounting on or about the day of that meeting.

As it happened; I have provided under oath by affidavit, to the validity of circumstances that followed.

First; there was a need to get a court order to have all of the companies records and files delivered to my office. That instance resulted in my affidavit as to the condition of those files when delivered.

Second; I was asked to sign another affidavit that I notified Harvey concerning the amounts due for the extra work preparing both 2015 & 2016 returns and the amounts then due for those years, to present to the court to get money from Jones Pacific Maritime LLC out of the courts sequestered account and pay those bills.

I also testified in his divorce trial, as to the missing files and need to declare all of the settlement award as income for that reason.

It should be noted that the result of the first payment and variance thereafter, to include the hours involved with the various attorneys, that, Jones Pacific Maritime, paid a total of $21,000 plus for the return preparations, for the years

USDC WAWD Jones Pacific Maritime, LLC v. Wahkiakum County, Inc. - **2**

2015 & 2016. and associated trial testimony.

    After that I also provided yet another affidavit for Jones Pacific Maritime LLC, for a related court.

    This affidavit is for the purpose of identifying the original agreement with Harvey Jones, the payment made on that original agreement, at that time, (6, 13, 2016 ). And also; to identify other related affidavits I have personally provided for Harvey Jones, Jones Pacific Maritime LLC and for his ex-wife's attorney to get the money from the court for payment and taxes due.

    Signed this day of September __14__ 2021 at my office 11115 NE 14th St. Suit 103 Vancouver Washington, County of Clark.


_Carolyn Olsen_

Carolyn Olsen

STATE OF OREGON     )
                        ) ss
COUNTY OF CLATSOP   )

I, Che Auditor, being over the age of 18 years and legally competent to testify to matters set forth herein, with personal knowledge of the same, now declare on oath and subject to the laws of perjury in the State of Washington, as follows:

I am the owner of EZ Move, a multi service moving company located and working out of Astoria Oregon and surrounding areas.

In 2018 I was contracted by Mr. Harvey B. Jones to move a variety of shop equipment, an aircraft, a 22-foot aluminum boat with no trailer and another pleasure boat on its own trailer, three roller cabinet tool chest full of tools, other cabinets full, a 16 foot by 30-foot storage room attached to his shop full of food, medical and camping supplies along with a multitude of machinery, power tools, parts and associated supplies including but not limited to a few thousand pounds of chains, binders, winches, hoists, custom work benches, shelving and a partially built paint booth all of which, was assembled with large bolts and fasteners.

The court order also listed a number of handguns, rifles and shotguns along with their associated anomalies both antique and more modern types.

I was informed by Mr. Jones that because of his divorcing wife's actions he could not have possession of his own firearms and was required by the court to have his designated person retrieve and keep them for him at that time. Due to that I was introduced to his representative that was going to assist with the moving project and he accompanied me and my assistant to Mr. Jones shop to photograph, inventory and provide Mr. Jones with a more accurate estimate for moving his property.

With my understanding of the total amounts, weights and labor disassembling his work benches, shelving paint booth and machinery along with using two moving vans and extra personnel, to relocate the property from his shop approximately 1800 feet to the local storage, my initial estimate was about two day's work and between 3 to 5 thousand dollars for the labor.

It required about two weeks to finally make contact with Ms. Jones and then wait for the day she said I could see the property that was to be moved. That is and always has been my business practice, to get an actual on sight inventory with photography for exceptional and heavy things, before providing a solid bid on a relocation job. And my contact with Ms. Jones was clear on that point.

I arrived at the residence with Mr. Jones representative, Mr. Paddock and my assistant to retrieve Mr. Jones firearms and organize my moving inventory.

When I arrived at the shop residence, I introduced myself and associates. Ms. Jones, a younger woman I understand is her daughter, Tiffany, and a small man I understand is her husband Hester, who had been using Mr. Jones shop during his absence were there together.

Ms. Jones and her daughter almost immediately began verbally attacking Mr. Paddock and with terrible insults and literally drove him away and he departed. It was incredibly embarrassing to witness. Although the small man never spoke a word in English, he remained close at hand, intently observing everything me or my assistant tried to do to accomplish why we had come there in the first place.

After that I attempted to get my inventory moving plan, but I was physically blocked by Ms. Jones' daughter, no matter which way I turned, and she told me that she was a witch and that she would put a hex on me and Harvey if I did anything to help him.

It was clear Ms. Jones was agitated and very clear she intended to not let several articles on the list I had with me be moved. For example, some of the large roller tool chest full of tools, the paint booth some equipment and other things. Her daughter repeatedly claimed ownership of the property wile ordering us to get out and literally stopped me from moving in any direction by placing herself, directly in front of me spouting off hellish language at me and my assistant and forbade us from photographing anything.

In all my business years, having relocated personal property of all types, several times for individuals going through separation by court orders and by mutual agreements, even when disputes arose over certain items. I have never felt the intimidation and threat that was present during the time I was at Mr. Jones shop.

I was not allowed to even see the storage area attached to the shop at all. But as I was leaving, due to the fact I could not do my job, Ms. Jones brought out a couple of Mr. Jones heirloom firearms. One being his Great Great Grandfathers Civil War weapon and gave them to me.

In my opinion, Ms. Jones did that with the express intention of creating a violation of the court order and involve me in a crime situation. I say this because within the hour, I got a call from the local sheriff's asking me if I had given my client Mr. Jones, his inherited firearms. I informed the deputy that called me that I had not and had what Ms. Jones had given me in my possession.  Again, not long after the first call, I was called again and because of another report, had to explain the situation with my client, that he had previously informing me of the situation his wife had crated concerning possessing his personal firearms, and what had taken place while I had attempted to get my inventory. The officer was satisfied that nether I or my client had violated the court order and that was the last I heard from them.

I have previously written out a statement for Mr. Jones about the circumstances I witnessed trying to organize moving his equipment for him when he was going back to court to try recovering his property. But that was before I learned about several things that resulted from my encounter with Ms. Jones and her family.

Within the week of my attempted inventory I was notified by Better Business I had been reported for doing bad and unethical business and my business ratings had suffered a considerable blow as a result. It took a lot of effort to try undoing some of the damage that had been done to my business. And if that were not enough, I found that several websites that rate businesses had also posted derogatory and incriminating comments about my business EZ Move.

What was done to me and my good name was uncalled for and caused me a lot of stress and work trying to correct everything that had been reported about me and my business name.

As a result of what was done to hurt my compony and good name, it was evident that I could not be involved moving my clients property and for the first time in my life doing business, I had to renege on my agreement to assist Mr. Jones relocate his shop equipment. It was just to much of a volatile situation and not worth the risk of further damage to my business and good name.

Signed in Astoria, Oregon this *19* day of ~~February~~ *September* 2020.

Che Auditor

*Signed: 3:30 p.m. at logger resturant in knappa, Or.*

STATE OF OREGON          )
                         ) ss
COUNTY OF CLATSOP        )

On this day Che Auditor personally appeared before me; and he is known to me to be the individual described in and who executed the foregoing instrument and acknowledged that he signed the same as his free and voluntary act and deed, for the uses and purposes herein mentioned.

4

1          IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON

2             IN AND FOR THE COUNTY OF WAHKIAKUM

3    _____

4    In re the Marriage of:          )

5    SHERRIE DIANE SMITH,            ) Cause No. 16-3-00859-6

6              Petitioner,           )

7    and                             )

8    HARVEY BRITTON JONES, III,      )

9                Respondent.         )

10   _____

11                        HEARING

12        The Honorable Donald J. Richter Presiding

13                  September 23, 2019

14   _____

15

16

17

18

19

20

21

22   TRANSCRIBED BY:  Angela Dutenhoffer, CET

23                    Reed Jackson Watkins, LLC

24                    Court-Approved Transcription

25                    206.624.3005

```
 1                    A P P E A R A N C E S

 2

 3

 4    On Behalf of Petitioner:

 5    MEGAN ELAINE GILMORE

 6    Falkenstein Zandi PLLC

 7    950 12th Avenue

 8    Suite 100

 9    Longview, Washington 98632

10

11    On Behalf of Respondent:

12    Stephen W. Pidgeon

13    Attorney at Law

14    1523 132nd Street Southeast

15    Suite C

16    Everett, Washington 98208-7200

17

18

19

20

21

22

23

24

25
```

```
 1                          -o0o-

 2                    September 23, 2019

 3

 4         THE COURT:  Good morning.

 5         MS. GILMORE:  Good morning.

 6         MR. PIDGEON:  Good morning, Your Honor.

 7         THE COURT:  This matter comes on -- well, we'll start with

 8    16-3-00859-6.  This comes on for Mr. Jones' motion to vacate

 9    the judgment.

10      I have read the motion to vacate and I've read the

11    response.  And then there was a motion to strike

12    declarations.  Do we need to hear whether or not to strike

13    before we do the main motion?

14         MS. GILMORE:  I'm happy to address my formal objection.  I

15    did file that along with our response.  And I did detail the

16    exhibits and the testimony that was then provided at trial.

17    I think that that is precluded from being included now at

18    this motion.  I do ask the Court to strike them from the

19    record or from considering today's motion.

20         THE COURT:  Any response to that, sir?

21         MR. PIDGEON:  Yes, Your Honor.  This motion that we've

22    brought, Your Honor, comes on two provisions under CR 60(b).

23    One is CR 60(b)(5), judgment to vacate on the basis that the

24    judgment was void and on the basis of CR 60(b)(11), which is

25    other miscellaneous reasons.
```

1          The bulk of the exhibits -- in fact, all the exhibits have

2     been presented not to substantiate the equitable argument

3     under CR 60(b)(11), but rather to substantiate the argument

4     under CR 60(b)(5) that the judgment is, in fact, void.

5          And given the fact that this case could affect the heart

6     of the matter, I think, before the Court is what's missing

7     in this case.  What's missing in this case is any naming of

8     Jones Pacific Maritime as a party.

9          There's no summons.  There's no petition.  There's nothing

10    on file.  And, yet, the decision of the Court was to

11    distribute the assets of Jones Pacific Maritime, including

12    assets such as the maritime vehicle the Santa Cruz and the

13    maritime vehicle the Chesapeake.  Those assets are under the

14    exclusive and original jurisdiction of the United States

15    District Court.

16         And so the exhibits that have been placed here both with

17    Carolyn Olson's exhibits and the exhibits in Mr. Jones'

18    declaration are placed before the Court for purposes of

19    substantiating the CR 60(b)(5) motion.

20         THE COURT:  All right.

21         MS. GILMORE:  And, your -- sorry.

22         THE COURT:  Go ahead.

23         MS. GILMORE:  And, Your Honor, he was represented by four

24    very competent counsels throughout this process and

25    represented by counsel at trial.  None of these exhibits

```
 1        were submitted within -- at trial.  And, more importantly,
 2        weren't submitted through discovery.  The reason why the
 3        substantial sanction took place under the Court's ruling was
 4        because he violated severely Washington State and local
 5        court rules regarding discovery.  So at this point he
 6        shouldn't have the opportunity to retry the case with the
 7        information.  This is the same documentation that he
 8        attempted to provide to the Court at Judge Goelz's home and
 9        that was already denied.  This is new evidence that
10        shouldn't be considered.
11          MR. PIDGEON:  I'd like to respond --
12          THE COURT:  So --
13          MR. PIDGEON:  -- to that, Your Honor.
14          THE COURT:  -- I'm going to make a ruling.
15          So as to the evidence under CR 60 void, my understanding
16        it is based mainly on a jurisdictional argument and the
17        Court not having jurisdiction over those items.  That's
18        something that can't be brought.  And the evidence that is
19        submitted will be solely used for that purpose.  It will not
20        be used for any sort of motion for reconsideration or
21        argument as far as the equitable distribution of the assets
22        because that is not an appropriate issue for this Court to
23        delve into with new evidence.
24          All right.  With that understanding, I intend to have ten
25        minutes per side.
```

1        Sir, would you like to reserve any of your time for

2    rebuttal?

3        MR. PIDGEON:  Yes, I would, Your Honor.  I would like to

4    reserve five minutes for rebuttal.

5        THE COURT:  All right.

6        MR. PIDGEON:  Let me known when you're prepared to start,

7    Your Honor.

8        THE COURT:  Sir, you have five minutes.  You may begin.

9        MR. PIDGEON:  Thank you, Your Honor.

10       Your Honor, may it please it the Court, Stephen Pidgeon,

11   who is appearing on behalf in a limited basis on behalf of

12   Jones Pacific Maritime and also on the basis of full time

13   for Harvey Jones in this matter.

14       We brought a motion to vacate the judgment in particular

15   in regard to the assets being held by Jones Pacific

16   Maritime; assets that were in the possession of Jones

17   Pacific Maritime before this action was filed on September

18   1st, 2016.  It's very critical, I think, to this Court's

19   consideration that some of the assets; i.e., the maritime

20   vessel Chesapeake and the maritime vessel Santa Cruz are

21   under the exclusive jurisdiction of the United States

22   District Court, pursuant to constitutional provisions, which

23   have granted that.

24       Of course, there is a Coast Guard registry that

25   substantiates both the ownership and the quality of the

1    vessels that were here.

2        And so when I look through the record -- and I went

3    through the entirety of the record -- I saw no evidence

4    whatsoever that there was any attempt to serve or to join

5    the party Jones Pacific Maritime, LLC.  But, instead, there

6    were willingly many orders that dipped into the assets of

7    that LLC.

8        In addition to that, what we have provided before the

9    Court, as part of the exhibits, is the Naknek settlement.

10   The Naknek settlement is quite specific in its delineation

11   in terms of -- first of all, Harvey Jones and Jones Pacific

12   Maritime remained as parties in that.  And the settlement

13   does -- contrary to the provision set forth by opposing

14   counsel, there is a specific delineation as to what money

15   was paid for back wages and what money was paid for damages

16   to the MV Chesapeake.  And that's very quite specific.

17       Now, also, Counsel has made representation that Mr. Jones

18   was represented by competent counsel during this trial.  My

19   review of the case shows something quite to the contrary

20   that, in fact, the discovery sanctions were piling up

21   against him because Counsel flat refused, it's my

22   understanding, to provide the documents to the Court that

23   Mr. Harvey had provided to his counsel -- or Mr. Jones had

24   provided to Counsel.  So I take issue that he was

25   competently represented.

1      However, we put forward a body of -- a body of authority

2      here inside the brief demonstrating that, in fact, original

3      jurisdiction is had in the United States District Court of

4      maritime assets.

5      And, in fact, opposing counsel, in her response to this

6      motion, brought forth the judgment concerning the SEAHORSE,

7      an asset not part of this litigation, but it was a judgment

8      made by Benjamin Settle in the United States District Court

9      for the Western District of Washington in Tacoma, and --

10     which we believe is appropriate.

11     So, as a consequence, we have a very serious issue here.

12     And the seriousness of the issue is, is that two boats were

13     transferred without the party being named as part of this

14     action.  In my view, it's a gross violation of due process,

15     protected under the United States Constitution and of a

16     gross violation of constitutional provisions governing

17     jurisdiction.  As a result, we do believe that any judgment

18     concerning the assets of Jones Pacific Maritime is a void

19     judgment.  Personal service did not attach, nor did subject

20     matter jurisdiction.

21     Now, Counsel has made hay about International Shoe about

22     whether or not there's minimum contacts and so forth.

23     Minimum contacts is -- does not establish jurisdiction.  It

24     is a provision that allows for jurisdiction from minimum

25     contacts, but jurisdiction, pursuant to Washington statutes,

1    requires the service of a summons and complaint, which never

2    happened.

3        And, furthermore, there was no counsel representing Jones

4    Pacific Maritime during -- at any point during the trial.

5    Mr. Jones cannot represent Jones Pacific Maritime.  He's

6    prohibited.  You have to be an attorney to represent a

7    limited liability company.  He's not.  He couldn't do it.

8    There was no counsel here.  He couldn't waive.  If he had

9    waived, he can't do it on behalf of Jones Pacific Maritime.

10       Therefore, there's no representation that has been made

11   before the Court by Jones Pacific Maritime prior to this

12   hearing.  And, therefore, we're respectfully asking that the

13   Court vacate the judgment as to all of the assets of Jones

14   Pacific Maritime.  And we have provided the Court with

15   findings of facts and conclusions of law and a proposed

16   order.

17       Thank you, Your Honor.

18       THE COURT:  All right, Counsel.  You have ten minutes.

19       MS. GILMORE:  Thank you.  For the record, Megan Gilmore on

20   behalf of the petitioner and nonmoving party, Sherrie Jones,

21   now Smith.

22       Again, we do detail for you in our declaration first the

23   motion to reconsider and the motion to vacate.  We do argue

24   for the Court that Counsel is asking the Court to do both.

25   Rather than within a vacate, he is asking to reconsider.

1       Just detailing kind of the history of this case, this case
2       went to trial in July of 2018.  The Court made a ruling and
3       the final orders were entered in October.  The husband then
4       filed a motion to reconsider on October 30th, 2018.  That
5       motion was denied by this Court.  He then filed a notice of
6       appeal on November 20th, 2018, which was later dismissed
7       based on his own motion.
8       Asking the Court then to reconsider a previous ruling
9       denying reconsideration, this Court doesn't have authority
10      to do and would be better addressed in the appellate court.
11      However, that now has been dismissed.  We ask that the
12      motion to reconsider is obviously denied.
13      Looking to the motion to vacate, Counsel has detailed that
14      he does ask for a motion to vacate under two theories:
15      first, 60(b)(5) and 60(b)(11).  First looking to
16      CR 60(b)(5), we detail for you the facts of this case, as
17      well as the case relevant to this.  Your Honor has obviously
18      reviewed, that so I won't go into too much detail.  However,
19      we do argue that this -- the judgment presented by the Court
20      was not void, as explained within the case law.  Judgment is
21      void if the Court lacks personal or subject matter
22      jurisdiction over the case.  The Court has personal
23      jurisdiction over the parties in this case, as they are
24      residents of the State of Washington and married in the
25      State of Washington.

1          Within my memorandum of law, I go as far as explaining to

2     the Court that a marriage is between two people.  So if this

3     included every case that included a business, it would need

4     to be named, provided a summons of petition.  That would be

5     happening on a regular, if not everyday basis, and it just

6     isn't.

7          The Court has subject matter jurisdiction over this

8     marriage and the dissolution of that through RCW 26.09.

9     Again, a marriage is between two people.

10         As, and explained to you within the declaration, this

11    business was created by the parties during the marriage.

12    For the purposes of Washington State business licensing,

13    Mr. Jones is the sole owner.  Because Washington State is

14    community property, these people both owned that business.

15    The wages and back wages that were subject to that

16    litigation were community assets, and the damages therein

17    were community assets and divided properly by this Court.

18    There is no reason that this Court doesn't have jurisdiction

19    and the judgment should be void in this case.

20         We ask the Court to deny the Court's -- excuse me -- deny

21    the respondent's motion as regards to 65 -- excuse me --

22    60(b)(5).

23         Next, looking at 60 -- or -- 60(b)(11), this is a catchall

24    provision.  We do explain to the Court in my review of case

25    law, this is typically applied to default judgments and

1    service by publication.  This is a substantial catchall that

2    is only in circumstances that are extraordinary.

3        The ruling in this Court was fair and equitable, and the

4    ruling explains it based on itself.  The husband was awarded

5    $50,000 of assets and given a 90-day period to exchange

6    that.  He then did file a motion for a contempt.  That

7    deadline was extended another six weeks to March.  There was

8    a review hearing set.  The parties did agree that a certain

9    person would be moving the assets and the dates that those

10   would be transferred.

11       The respondent continued to cause issue, and the Court

12   found that based on the decree that had been previously

13   entered by this Court, that the -- Mr. Jones had forfeited

14   the property and that it would be in my client's petition.

15       We do ask that the Court deny any sort of motion for

16   reconsideration, motion for vacating.  And we do ask the

17   Court award substantial attorney's fees in this case.  My

18   client details for you what's been going on since the trial

19   took place and even before that.  We were before the Court

20   multiple -- on multiple motions because assets weren't being

21   paid because discovery wasn't being exchanged even after

22   trial.

23       MR. PIDGEON:  Your Honor, I want to object at this point.

24   I don't know how this is relevant to our motion today if

25   we're going to revisit the entire past procedural history of

1    the case.  There's been nothing that's been going on at all

2    since this motion was brought.  I just don't see how that's

3    relevant to this motion.  So I'm objecting on the basis of

4    relevance.

5        THE COURT:  I understand the objection.  She can spend her

6    ten minutes in argument the way she wants to spend it.  And

7    I will delve between what's relevant for today and what's

8    not.

9        You may continue.

10       MS. GILMORE:  Even after the Court entered the decree, the

11   husband then filed -- or sent to the judge personally to his

12   home various documents.  I then had to respond to those

13   documents.  We responded to motions for reconsideration.  My

14   client then had to retain new counsel for an appeal and then

15   that appeal was eventually dismissed.  And then roughly

16   three weeks before the deadline ends for a one-year period

17   for a CR 60 motion, he now brings this, alleging that he --

18   that the Jones Pacific Maritime didn't receive proper

19   notice.

20       In reality, again, he was represented by three to four

21   counsels throughout this two- to three-year process.  They

22   did not file a motion to dismiss upon receipt of our

23   petition.  They then responded -- or he responded

24   acknowledging the jurisdiction was proper.  At trial he

25   presented virtually no evidence and made no arguments

1    regarding jurisdiction.  There's no separate third party

2    here that their rights -- constitutional rights are being

3    violated.  He had obviously noticed and the parties had

4    noticed as a joint community that this was their business

5    and that it was subject to this dissolution.  Jurisdiction

6    was proper.  The ruling of the Court was fair and equitable.

7         We do believe that the violations were egregious and the

8    bad behavior has continued on the part of the husband and it

9    does warrant a substantial award of attorney's fees of

10   $2,500.

11        THE COURT:  All right, Counsel.  You have your five

12   minutes.

13        MR. PIDGEON:  Thank you, Your Honor.

14        Your Honor, the net result of the judgment in this case is

15   that Mr. Jones has received all the debts, and the

16   petitioner has received all of the assets.  I mean, that's

17   the net result.  And the forfeiture provision that was

18   contained in the final order of that allowed for some kind

19   of equity to exist prior to the forfeiture.  Once the

20   forfeiture provision was enacted, it became just exactly

21   that, an entirely inequitable decision.  We put all the

22   debts with Mr. Jones and all of the assets with Mrs. Smith.

23        One of the things that we point out in our brief,

24   Your Honor, is that because the house was paid off, there is

25   a long-standing rule under Washington law that requires an

1    analysis of how much separate property went into the house.

2    My understanding is that Mr. Jones paid virtually all of

3    that, with the exception of the commission that Ms. Smith

4    picked up when she sold the home to herself as a real estate

5    agent.  And that is also in our brief.

6    Now, as for the 60(b)(5) motion, it makes no difference

7    that both parties are located in the state.  The fact of the

8    matter is, is that Jones Pacific Maritime, LLC, an

9    organization that was intended to be formed in 2014 as a

10    holding company for separate property -- and I want -- I do

11    want to point out to the Court that in the Court's final

12    order of divorce, the Court did declare the MV Chesapeake to

13    be the separate property of Mr. Jones.  It did.  They

14    never -- at no time did the Court find that the Chesapeake

15    was, in fact, community property.

16    Given the fact that the Court has long since held and that

17    there is no chance of appealing that decision now that the

18    Chesapeake was separate property, it goes back to the Naknek

19    settlement, which delineated $340,000 in settlement money

20    for the damages that were done to the Chesapeake, which this

21    Court later determined was the separate property of

22    Mr. Jones.

23    So, as a consequence, we believe the bulk of the

24    discussion here on the record does demonstrate that the

25    Chesapeake was separate property and that the damages from

1        the Naknek settlement of 340,000 went to the Chesapeake;

2        that the money that was for back wages was, in fact, spent

3        on the marital community, and, in fact, even additional

4        amounts.  And, as a result, we do not think that attorney's

5        fees are warranted here in this particular case.

6           The 60(b)(5) motion is particular as to whether or not the

7        judgment is void on its face.  And, in addition to that, as

8        we put in the brief, such a motion can be brought at any

9        time during the proceedings.

10          Even if we had passed the one year time for a 60(b)(1),

11       (2), and (3) motions, a 60(b)(5) motion could be brought at

12       any time and is subject to de novo review by the Court of

13       Appeals.  So, as a consequence, we do believe that the

14       motion is timely, and we do believe that the circumstances

15       in this case do warrant the Court's reconsideration of the

16       fact that the net result of the judgment in this case has

17       been highly inequitable.  There is no asset on Mr. Jones'

18       side of the equation as a result of the forfeiture provision

19       put forth in the final decree.

20          And so finally, Your Honor, we do ask that the Court,

21       number one, vacate the judgment as to the disposition of any

22       asset belonging to Jones Pacific Maritime, LLC, including

23       the $340,000 that was from the Naknek settlement, the right

24       and title to the MV Chesapeake, the right and title to the

25       MV Santa Clara.

1          And we are petitioning the Court to reconsider the final

2      decision.  In fact, what we're asking for -- what we've

3      asked in our pleadings is that the Court reconsider the

4      judgment just to allow Mr. Jones to get his personal

5      property back, like his heirlooms, his tools, his family

6      photos, the watch his grandfather gave him, his personalized

7      razor that are of no use to Ms. Smith, but that are of high

8      value to him.  And so, as a consequence, we -- that is --

9      the part of what we're asking for in an equitable change-up

10     in this decision, Your Honor.

11         MS. GILMORE:  And, Your Honor, I would like to note, I

12     think the --

13         THE COURT:  No.  We're not -- we're not going back and

14     forth.

15         So as to the CR 60 motion, based on the assets belonging

16     to an LLC, and, thereby, the LLC requiring notice and

17     summons in order to somehow appear in the divorce action,

18     this Court is unaware how the company has any standing in

19     the divorce proceeding between the two parties.  How the

20     company would notice in and have any standing in the

21     dissolution is foreign to this Court.

22         Now, assets owned by the two parties, including companies,

23     are routinely distributed in divorce proceedings.  And,

24     again, all property, separate and community, is before the

25     Court for an equitable distribution during the divorce

1          proceeding.

2              So the lack of notice to an LLC that was owned by one of

3          the parties is not a basis, under this Court's ruling, to

4          grant a motion to vacate for being void.

5              As to the discussion that all the assets were given to the

6          wife and all the debts were given to the husband, this Court

7          is not going to delve back into the decisions made by the

8          prior Court during the divorce proceeding.  Those decisions

9          were appealable and could have been handled in the proper

10         manner to motions for reconsideration, which I believe there

11         was one, and, also, then filing by prosecution of the

12         appeal.

13             As to this Court's decisions, which ultimately resulted in

14         this Court's decision to finally allow for the forfeiture of

15         the property after repeated attempts to accommodate the

16         petitioner -- excuse me -- the respondent getting his

17         property back from the petitioner, as was allowed in the

18         previous decree, this Court finds that it made several

19         attempts to accommodate the difficulty that was expressed by

20         the respondent in getting his property back, and had several

21         hearings, which included evidentiary hearings.  Movers,

22         affidavits, and declarations convinced this Court that the

23         respondent was now using that process to abuse Petitioner,

24         which led to its decision to terminate, after given several

25         opportunities to reclaim that property and to forfeit the

1    property according to the Court's previous ruling.

2        As to the idea that it's somehow inequitable what happened

3    in this case, the result, looking at its face, without the

4    history of the case, might be confused when considered in

5    that lighting.

6        However, any inequity that resulted from this case, this

7    Court finds, is a direct result of the behavior of the

8    respondent.  And the forfeiture, such as it was, was allowed

9    finally when it became clear to the Court that the

10   respondent was using that process to punish the petitioner.

11       This motion resulted in significant work and response,

12   again, from the petitioner.  The Court will award $1,000 in

13   attorney's fees for having to respond to this motion.

14       This Court is aware that this may be an appealable

15   decision and will make any other findings the parties feel

16   necessary to accommodate that process.

17       MR. PIDGEON:  Thank you, Your Honor.

18       THE COURT:  Thank you.

19       MS. GILMORE:  Is the Court setting a timeline in which

20   those attorney's fees need to be paid?

21       THE COURT:  Sixty days.

22       MS. GILMORE:  And I can prepare an order with a judgment.

23       THE COURT:  If you need a presentment, you can note it up;

24   if not, I'll sign the order ex parte.

25       MS. GILMORE:  Okay.

1         THE COURT:  Bring it up, Counsel.

2         MS. GILMORE:  Thank you.

3              (September 23, 2019 hearing concluded)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        C E R T I F I C A T E

 2

 3    STATE OF WASHINGTON              )

 4                                     ) ss

 5    COUNTY OF KING                   )

 6

 7              I, the undersigned, do hereby certify under penalty

 8    of perjury that the foregoing court proceedings were transcribed

 9    under my direction as a certified transcriptionist; and that the

10    transcript is true and accurate to the best of my knowledge and

11    ability, including any changes made by the trial judge reviewing

12    the transcript; that I received the audio and/or video files in

13    the court format; that I am not a relative or employee of any

14    attorney or counsel employed by the parties hereto, nor

15    financially interested in its outcome.

16

17

18              IN WITNESS WHEREOF, I have hereunto set my hand this

19    22nd day of October, 2019.

20

21

22

23    Angela Dutenhoffer

24    Angela Dutenhoffer, CET

25
```